CaeutheRS, J.,
delivered the opinion of the Court.
This bill is filed to set up a resulting trust in a tract of 1700 acres of land in Decatur county, upon this state of facts: The complainant, Polly Pritchard, was the daughter of Samuel Smith, of Montgomery county, and, as one of his heirs and distributees, became entitled to a tract of land of some three hundred acres in that county, several slaves, and some money. She first married Prancis Warden, who died, leaving several children, the other complainants in this bill. In the year 1844 or 1845, she intermarried with James Wallace, who died in August, 1852; and in 1858 she married her present husband, William Pritchard. In 1850, Wallace purchased the tract of land in question from Igleheart at four thousand dollars, two down, and the other in three equal annual payments. The title to the land was taken in his own name, and he settled on it soon after the purchase, and there died, leaving his family in possession.
Recently a proceeding was instituted for a partition of the land among defendants as the collateral heirs, after assigning dower to the widow. Wallace settled the children of his wife, without title, upon various parts of the tract. He left no children at his death, and his widow *407 became entitled to Ms whole personal estate and dower in the land. It appears that his slaves and other property personal amounted to some twelve or fifteen thousand dollars in value. Some part of the consideration of the land yet remains to be paid.
But these facts do not affect the questions raised by this bill. It is filed to enjoin the partition proceedings, and to have declared her title to the whole tract of land, upon the ground that the money with which the cash payment was made, was derived from the sale of her tract of land in Montgomery for $1100, and the remaining $900 from her father’s estate; and that she has paid, or is bound to pay, the other $2000 out of her own property — that is, the property to which she is entitled by law as the widow of said Wallace. The bill charges that there was an express agreement and positive assurance on the part of her husband, that the proceeds of her three hundred acres of land should be invested in lands for her and her children; and that this was the condition on which she agreed to sell it. It is also charged that the same agreement extended to all moneys derived from her father’s estate in her right, and that the $900 came from that source. As to the amount of this last item, the proof is very unsatisfactory and conflicting. The executor of Smith says he paid him only $200 on that account; but declarations of Wallace are proved, going to show that $1900, if not the whole of the first or cash payment, was made out of the proceeds of her land and other moneys received from her father’s estate. But in the view we take of the case, it is not at all material how that was as to the amount. Whatever he may have received on that account became his own by virtue of his marital rights; *408 and no trust could be raised against him, no matter what disposition he may have made of it. How that would be in a case where the wife had taken steps to secure her equity to a settlement out of it, or was prevented from doing so by a promise and agreement on the part of the husband to invest it for her benefit, need not now be determined, as no such case is presented in this record. As to that part of the case, then, we consider there is no question. There was no act on her part to be performed to enable him to recover that part of her estate: he had a right to receive it simply as husband, and to deal with it as his own, without her sanction or cooperation, subject alone to an active movement on her part in a Court of Chancery, to declare the “wife’s equity” in her favor. This not having been done, and no charge that it was prevented by any promise of his, or any thing done on his part, she cannot now complain, or ask any benefit on account of it.
But a very different case is made out in relation to the proceeds of her land. The proof is entirely satisfactory that she was induced to concur in the sale and conveyance of her land in Montgomery county upon a distinct agreement on his part that the amount received for it should be invested in other lands in West Tennessee for her benefit. The argument used by him to her was, that much more and as good if not better land could be bought with the money, and in the end be greatly to the advantage of herself and children. There was not, perhaps, any clear and distinct proof by any one present at the time such an agreement was made between them, but the declarations and acts of both establish the fact with equal conclusiveness. He seemed to have no concealment on the subject, but during the whole period, from the date of the trans *409 action down to his death, always declared the facts to any one who talked with him in relation to the land sold and purchased. He took her over to see the land before he purchased it, and obtained her consent and approbation to the purchase before it was made. Her children were settled on parts of the land without contract or consideration, and arrangements made for their permanent use of it, as the facts indicated, with declarations as to his purposes and intentions to that effect. And there is good reason to believe that if he had lived he would have carried out his intentions in legal form; or that, if he had made a will, he would not -have been unmindful of his engagements with his wife in the matter. But all that is speculation now, and the parties must stand upon their legal rights, as they arise out of the facts established.
There can be no doubt, from the evidence, that before the complainant did consent to the sale of her land, her husband agreed and distinctly promised her to invest the proceeds for her benefit and that of her children after her in this tract of land, and that the proceeds were so invested. The probability is strong, from the facts, that this was the only condition on which she would or did agree to the sale, and that this assurance induced her to sign the conveyance of her land. What, then, is there in the way of the enforcement of this trust ? The statute of frauds is not, because such a .trust is good without writing, when clearly established by proof. It is in the nature of a resulting trust, which may always be set up by parol. It is based upon a sufficient consideration. It is not “a contract for the sale of lands,” which is required by the statute of frauds to be in writing, but it is the assumption of a trust for the benefit of another, of a character which *410 need not be in writing to make it obligatory upon tbe trustee, and will be enforced on account of the consideration. If it were voluntary, the law would not enforce it.
Our own cases fully establish this doctrine. Chester vs. Greer, 5 Humph., 84; Powel vs. Powel, 9 Humph., 477; Ex parte, Yarborough and others, 1 Swan, 202. In this last case the Court say: “ There can be no question in the case before us as to the wife’s right had there been any agreement or understanding between her and her husband that compensation should be made, or that he should be regarded as her debtor for the proceeds of her proportion of the land sold and conveyed by them.” Without such an agreement, the receipt of the price of her land would not make him her debtor, or fasten any trust upon him. This is the clear distinction in all the cases, and it would be useless to accumulate authorities upon the subject at this day, when it is so well settled that the wife may deal with her husband in relation to her separate property, and hold him to the performance of his agreements with her upon that consideration. The eleven hundred dollars, then, received for her land, never became the money of the husband, but was the property of the wife as much as the land from which it was derived; and if he appropriated it by agreement to the purchase of land or other property, and took the title to himself, she could either make him her debtor for the amount, or assert a resulting trust in the property in which it was invested. In what does it differ from the ordinary case of a resulting trust, where the title to property is made to one person and the consideration paid at the time by another ? The money was hers by virtue of his agreement, and the title was made to him. She is in equity the owner, and he *411 held the legal title in trust for her. His heirs occupy the same position.
The result is, that the decree of the Chancellor dismissing the hill must be reversed, and the right of complainant Polly declared to that proportion of the land which the $1100 bears to $4000, the whole consideration. The title will be vested in her for life, and remainder to her children. This must be laid off to her as well as dower in the remainder of the tract. The remainder in the dower, as well as the balance of the whole tract, of course vests in the defendants as heirs at law of James Wallace.
The cause will be remanded for the execution of the decree to be now made.